**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FREEDOM WATCH, INC. | ) | |
| | ) | |
| | ) | Civil Action No. 1:12-cv-00731 (RBW) |
| *Plaintiff,* | ) | Judge Reggie B. Walton |
| | ) | |
| v. | ) | |
| | ) | |
| ORGANIZATION OF THE PETROLEUM | ) | |
| EXPORTING COUNTRIES | ) | |
| | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**DEFENDANT OPEC'S MOTION TO DISMISS FOR LACK OF
SERVICE OF PROCESS, WITH NOTICE OF ADDITIONAL DEFENSES OF LACK OF
JURISDICTION, LACK OF STANDING, AND FAILURE TO STATE A CLAIM**

Pursuant to Federal Rules of Civil Procedure 12(b)(5), 12(b)(1) and 12(b)(6) and in compliance with the August 7, 2012 Minute Order of this Court, Defendant Organization of the Petroleum Exporting Countries ("OPEC") respectfully (1) moves to dismiss the complaint for lack of service of process and (2) provides notice that it will also raise defenses of lack of jurisdiction, lack of standing, and failure to state a claim upon which relief can be granted.

In the August 7, 2012 Minute Order, this Court granted OPEC's Motion to Set Bifurcated Briefing Schedule, permitting OPEC to address first arguments relating to service of process in its motion to dismiss. The other bases for dismissal will be addressed, if needed, after the Court's decision on the motion to dismiss for lack of service of process.

A Memorandum of Points and Authorities and a Proposed Order addressing lack of service are attached.

Respectfully submitted on August 21, 2012:


/s/  Carolyn B. Lamm

Carolyn B. Lamm (D.C. Bar No. 221325)
Anne D. Smith (D.C. Bar No. 930867)
Hansel T. Pham (D.C. Bar No. 489203)
WHITE & CASE LLP
701 Thirteenth Street N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
Email:  clamm@whitecase.com
Email:  asmith@whitecase.com
Email:  hpham@whitecase.com

Robert A. Milne
Raj S. Gandesha
Bryan D. Gant
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113
Email:  rmilne@whitecase.com
Email:  rgandesha@whitecase.com
Email:  bgant@whitecase.com

*Attorneys for the Organization of the
Petroleum Exporting Countries*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of August 2012, I caused the foregoing motion to be filed with the Clerk of the Court using the CM/ECF system, and separately served a copy of the same either by Electronic Case Filing or by regular, first-class United States mail, postage pre-paid, on the following counsel of record:

Larry E. Klayman
LAW OFFICE OF LARRY KLAYMAN
2020 Pennsylvania Avenue, NW
Suite 345
Washington, DC 20006
Telephone: (310) 595-0800
Facsimile: (310) 651-3025
Email: leklayman@yahoo.com

/s/  Carolyn B. Lamm
Carolyn B. Lamm

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FREEDOM WATCH, INC.        ) | |
| ) | |
| ) | Civil Action No. 1:12-cv-00731 (RBW) |
| *Plaintiff*,    ) | Judge Reggie B. Walton |
| ) | |
| v.       ) | |
| ) | |
| ORGANIZATION OF THE PETROLEUM ) | |
| EXPORTING COUNTRIES    ) | |
| ) | |
| ) | |
| *Defendant*.    ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT OPEC'S MOTION TO DISMISS FOR LACK OF
SERVICE OF PROCESS, WITH NOTICE OF ADDITIONAL DEFENSES OF LACK OF
<u>JURISDICTION, LACK OF STANDING, AND FAILURE TO STATE A CLAIM</u>**

# TABLE OF CONTENTS

BACKGROUND ..................................................................................................1

    A.    Status of Proceeding ...................................................................1

    B.    The Parties ..................................................................................2

    C.    The Complaint ............................................................................4

    D.    Purported Service of the Complaint on OPEC ...........................4

    E.    OPEC's Grounds for Dismissal of the Complaint .....................5

ARGUMENT ......................................................................................................7

I.    PLAINTIFF HAS NOT, AND CANNOT, VALIDLY SERVE PROCESS
ON OPEC............................................................................................7

    A.    Rule 4 of the Federal Rules of Civil Procedure Governs Service of
Process on OPEC in This Case ....................................................8

    B.    OPEC Cannot Be Served Effectively By Any of the Methods
Listed Under Rule 4(f) ...............................................................9

        1.    There Is No Available Internationally Agreed Means of
Service in this Case ........................................................9

        2.    The Remaining Service Methods Listed in Rule 4(f) Are
Prohibited by Austrian Law ..........................................10

            a.    Austrian Law Requires the Assistance of the
Austrian Foreign Ministry to Serve OPEC ....................11

            b.    Austrian Law Requires That the Secretary General
of OPEC Expressly Consent to Any Service of
Process on OPEC ........................................................12

            c.    Austrian Law Prohibits Personal Delivery and Mail
Service on OPEC as Attempted by Freedom Watch ....................14

            d.    There Is No Other Method of Service Under Rule
4(f) That Accords With Austrian Law ..........................16

    C.    This Court Should Dismiss Freedom Watch's Complaint With
Prejudice ..................................................................................17

II.  OPEC INTENDS TO RAISE ADDITIONAL DEFENSES OF LACK OF
     JURISDICTION, LACK OF STANDING AND FAILURE TO STATE A
     CLAIM IN THIS CASE ........................................................................................18

     A.  The Complaint Should Be Dismissed for Lack of Subject Matter
         Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) Because
         Plaintiff's Claims Present a Non-Justiciable Political Question ...........................18

     B.  The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P.
         12(b)(6) Because the Act of State Doctrine Bars Consideration of
         Plaintiff's Claims ....................................................................................19

     C.  The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P.
         12(b)(6) Because It Fails to Allege a Plausible Conspiracy
         Involving OPEC .......................................................................................20

     D.  The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P.
         12(b)(6) For Lack of Antitrust Standing ...............................................................21

     E.  The  Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P.
         12(b)(1) For Lack of Personal Jurisdiction ..........................................................21

CONCLUSION .........................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................6, 20

*\*Associated General Contractors v. California State Council of Carpenters* ("*A.G.C.*"), 459 U.S. 519, 103 S. Ct. 897 (1983) .........................................................................................................21

*Baade v. Price*, 175 F.R.D. 403 (D.D.C. 1997) .................................................................................15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) .......................................6, 20

*Cambridge Holdings Grp., Inc. v. Fed. Ins. Co.*, 489 F.3d 1356 (D.C. Cir. 2007) ...........................7

*Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573 (Fed. Cir. 1993) ...................................................1

*Central Ohio Energy, Inc. v. Saudi Arabian Oil Co.*, Civ. No. 4:08-cv-00241 (N.D. Ill.)...............19

*Countywide Petrol. Co. v. Petroleos de Venezuela S.A.*, Civ. No. 4:07-cv-4415 (N.D. Oh.) ..........19

*Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382 (S.D.N.Y. 2002).............1

*El-Shifa Pharm. Indus. Co. v. U.S.*, 607 F.3d 836 (D.C. Cir. 2010)................................................19

*Estate of Klieman v. Palestinian Auth.*, 467 F. Supp. 2d 107 (D.D.C. 2006)..................................15

*Fast Break Foods, LLC v. Saudi Arabian Oil Co.*, Civ. No. 4:07-cv-4409 (N.D. Ill.)....................19

*\*Freedom Watch, Inc. v. OPEC*, No. 08-cv-21630 (S.D. Fla. Dec. 22, 2008) (Exh.1).....................5

*\*Freedom Watch, Inc. v. OPEC*, No. 08-cv-21630 (S.D. Fla. Feb. 26, 2009) (Exh.3) .............15, 18

*Friedman v. Estate of Presser*, 929 F.2d 1151 (6th Cir. 1991).........................................................7

*FTC v. Compagnie de Saint-Gobain-Point-A-Mousson*, 636 F.2d 1300 (D.C. Cir. 1980)..............16

*Gokey v. CITGO Petrol. Corp.*, Civ. No. 3:08-cv-1095 (S.D. Tex.) .................................................19

*Green Oil Co. v. Saudi Arabian Oil Co.*, Civ. No. 4:07-cv-4413 (N.D. Ill.)...................................19

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000)..........................22

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192 (D.C. Cir. 1992).........................................................1

*Hilska v. Jones*, 217 F.R.D. 16 (D.D.C. 2003) .................................................................................7

*Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S. Ct. 2061 (1977) ................................21

In re Potash Antitrust Litig., 667 F. Supp. 2d 907 (N.D. Ill. 2009) ..................................21

*Int'l Ass'n of Machinists & Aerospace Workers v. OPEC ("IAM"), 477 F. Supp. 553 (C.D. Cal.
    1979) .......................................................................................................................5, 8

*Int'l Ass'n of Machinists & Aerospace Workers v. OPEC ("IAM II"), 649 F.2d 1354 (9th Cir.
    1981) ...........................................................................................................................20

Koerner v. United States, 246 F.R.D. 45 (D.D.C. 2007) ...................................................7

Lorenzo v. Qualcomm Inc., 603 F. Supp. 2d 1291 (S.D. Cal. 2009) ................................21

*Melnitchenko v. OPEC, No. 00CA3173 (D.C. Super. Ct. 2000) ......................................5

Minn-Chem, Inc. v. Agrium Inc., 683 F.3d 845 (7th Cir. 2012) ........................................21

Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 119 S. Ct. 1322 (1999) .........7

*Prewitt Enters., Inc. v. OPEC, 224 F.R.D. 497 (N.D. Ala. 2002) .........................5, 8, 17

*Prewitt Enters., Inc. v. OPEC, 353 F.3d 916 (11th Cir. 2003) .............................. passim

Prunté v. Universal Music Grp., 248 F.R.D. 335 (D.D.C. 2008) ......................................1

*Spectrum Stores, Inc. v. Citgo Petrol. Corp., 632 F.3d 938 (5th Cir. 2011), cert. denied 132 S.
    Ct. 366 (2011) ........................................................................................................19, 20

Spectrum Stores, Inc., v. CITGO Petrol. Corp., Civ. No. 4:06-cv-3569 (S.D. Tex.) ......................19

United States v. Ferrara, 54 F.3d 825 (D.C. Cir. 1995) ...................................................22

Williams v. GEICO Corp., 792 F. Supp. 2d 58 (D.D.C. 2011) ....................................7, 15

## STATUTES AND RULES

D.C. Code Ann. § 13-423(a)(1) ........................................................................................22

Fed. R. Civ. P. 4 .................................................................................................................8

*Fed. R. Civ. P. 4(f) .................................................................................................. passim

Fed. R. Civ. P. 4(f)(1) ......................................................................................................8, 9

Fed. R. Civ. P. 4(f)(2) ................................................................................8, 14, 15, 18

Fed. R. Civ. P. 4(f)(2)(A) ...............................................................................................11

Fed. R. Civ. P. 4(f)(2)(B) .................................................................................................11

Fed. R. Civ. P. 4(f)(2)(C)(ii) ...................................................................................11, 14, 15

Fed. R. Civ. P. 4(f)(3) ...........................................................................................11, 16, 18

Fed. R. Civ. P. 4(h) ..................................................................................................8, 15

Fed. R. Civ. P. 4(h)(2) ...............................................................................................8, 15

Fed. R. Civ. P. 4(l)(1) ..................................................................................................7

Fed. R. Civ. P. 12(b)(5) ........................................................................................1, 2, 5, 18

Fed. R. Civ. P. 12(b)(6) ......................................................................................6, 19, 20

Fed. R. Civ. P. 12(f) .....................................................................................................20

Fed. R. Civ. P. 44.1 .......................................................................................................1

## TREATIES

Hague Convention on Civil Procedure, *opened for signature* Mar. 1, 1954, 286 U.N.T.S. 265......10

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *opened for signature* Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 .................................................................................................10

Defendant Organization of the Petroleum Exporting Countries ("OPEC") submits this memorandum of points and authorities in support of its motion to dismiss with prejudice the complaint filed by Freedom Watch on May 7, 2012.[1]  OPEC appears for the limited purpose of demonstrating lack of service of process and, as provided in the the Court's August 7, 2012 Minute Order, to give notice of the additional defenses it intends to raise in this action.  OPEC reserves, and does not waive, all immunities, defenses and objections to which it or its Member States are entitled in this case.

## BACKGROUND

### A.  Status of Proceeding

Plaintiff Freedom Watch, Inc. ("Plaintiff" or "Freedom Watch") filed its complaint against OPEC in this Court on May 7, 2012.  On May 29, 2012, OPEC filed a Motion for Extension of Time to Respond to the Complaint.  On May 31, 2012, the Court granted OPEC's motion and ordered OPEC to answer or otherwise respond to the complaint on or before July 19, 2012.

On July 5, 2012, OPEC filed a Motion to Set a Bifurcated Briefing Schedule, and on July 10, 2012, moved to expedite briefing of that motion or alternatively for an extension of the July 19 response date.  On July 11, 2012, the Court stayed the July 19, 2012 response date pending the Court's ruling on the Motion to Set a Bifurcated Briefing Schedule.  On August 7, 2012, the Court granted OPEC's Motion, setting August 21, 2012 as the date by which OPEC must file a

---

[1] OPEC submits the following materials in support of OPEC's motion: (1) Declaration of OPEC Secretary General Abdalla Salem El-Badri ("El-Badri Decl."); (2) Declaration of Wolfgang Hahnkamper ("Hahnkamper Decl."); and (3) Opinion of Judge Stephen M. Schwebel ("Schwebel Op.").  The materials addressing foreign law are filed pursuant to Fed. R. Civ. P. 44.1; the other materials are submitted in support of OPEC's motion to dismiss under Fed. R. Civ. P. 12(b)(5).  *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993); *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) (in resolving a motion to dismiss for insufficient service of process, a court must look to matters outside the complaint); *see also Prunté v. Universal Music Grp.*, 248 F.R.D. 335, 336 n.2 (D.D.C. 2008) (citing *Darden* in relying on materials attached to the pleadings).

motion to dismiss for lack of service of process under Fed. R. Civ. P. 12(b)(5) and provide notice as to all other defenses OPEC intends to raise in this action, which are to be briefed as scheduled by the Court if the Court denies OPEC's motion to dismiss for lack of service of process.   OPEC files this motion consistent with the Court's direction.

As of the filing of this Motion, Plaintiff has not filed any proof of service indicating the alleged method and manner of service of the complaint.

### B.       The Parties

According to its complaint, Freedom Watch is "an organization which seeks to promote and protect freedom in the United States and throughout the world" that is alleged to do business in the District of Columbia.  Complaint ("Compl.") ¶¶ 1, 14.  Freedom Watch claims to purchase gasoline and other petroleum products "sold by . . . OPEC." *Id*. ¶ 14.

OPEC is a voluntary international organization comprised solely of foreign sovereign state members, most of which derive their primary source of revenue from the production of petroleum.  El-Badri Decl. ¶ 3.  OPEC was established in 1960 by a treaty (the "OPEC Treaty") among the governments of Saudi Arabia, Kuwait, Venezuela, Iran, and Iraq, as a means to assure the exercise of their sovereign rights over their most important natural resource. *Id.*  The OPEC Treaty is registered with the United Nations as an international agreement, and is governed by international law.   Schwebel Op. ¶¶ 6, 12. OPEC's current members are Algeria, Angola, Ecuador, Iran, Iraq, Kuwait, Libya, Nigeria, Qatar, Saudi Arabia, the United Arab Emirates, and Venezuela (the "Member Countries"). *Id.* ¶ 5.

OPEC is a purely intergovernmental organization that operates on a non-profit, non-commercial basis, funded by equal contributions by its Member Countries.  El-Badri Decl. ¶ 6. OPEC does not own, produce, manufacture, refine, sell, or hold title to any petroleum products. *Id.*  OPEC serves only as a forum for its Member Countries to meet and discuss their petroleum

policies in accordance with their individual sovereign interests.  *Id.*

OPEC is not organized as a corporation or business organization.  *Id.* ¶ 7.  Its organization and operations are governed by the OPEC Statute, which provides that the supreme authority of OPEC is the Conference, a body that comprises only government delegations from Member Countries headed by the Petroleum Minister or a similarly high-level government official.  *Id.* ¶ 9; OPEC Statute (El-Badri Decl. Exh. 2).  Other than procedural decisions, all of the Conference's decisions require the unanimous agreement of the governments of all Member Countries present at Conference meetings.  *Id.*  OPEC also comprises a Board of Governors, which implements the decisions of the Conference, and a Secretariat, which carries out executive functions.  *Id.*

OPEC is guided by the principle of sovereign equality.  Each member state of OPEC makes its individual decisions as to crude oil production in the exercise of its exclusive authority and control over its own petroleum resources and in accordance with its laws and individual sovereign interest.  *Id.* ¶¶ 8, 11; OPEC Statute (El-Badri Decl. Exh. 2) art. 3.  Adoption or compliance with any decision reached at OPEC is voluntary.   OPEC has no authority to control or override decisions of Member Countries, no enforcement authority, and no power to penalize any Member Country for non-compliance.  El-Badri Decl. ¶¶ 11-12.

OPEC's headquarters have been located in Vienna, Austria since 1974.  OPEC's relationship with the Austrian Government is governed by the Agreement between the Republic of Austria and the Organization of the Petroleum Exporting Countries Regarding the Headquarters of the Organization of the Petroleum Exporting Countries ("OPEC Headquarters Agreement"), Aus.-OPEC, Feb. 18, 1974, 2098 U.N.T.S. 415.  OPEC Headquarters Agreement (El-Badri Decl. Exh. 3); El-Badri Decl. ¶ 13.  Article 5(2) of the OPEC Headquarters agreement

states:  "The service of legal process, including the seizure of private property, shall not take place within the headquarters seat except with the express consent of, and under conditions approved by, the Secretary General."  OPEC Headquarters Agreement (El-Badri Decl. Exh. 3) art. 5(2).

## C.    The Complaint

The complaint alleges that OPEC, its Member Countries, unspecified private oil companies, and others are engaged in a conspiracy to fix the price of petroleum and petroleum related products in violation of U.S. antitrust laws.  Although OPEC is the only named defendant, the acts that are at the heart of the alleged illegal conduct are those attributed to OPEC's Member Countries.  The complaint itself emphasizes that the "primary elements" of the alleged conspiracy "are the agreed-upon limits and restrictions on the production of oil and other petroleum products by OPEC's twelve member nations . . . ."  Compl. ¶ 3; *see also id.* ¶ 23 (alleging that OPEC's members agree on production quotas).  The alleged antitrust injury refers to purportedly artificial limits on crude oil production, *id.* ¶ 36, *i.e.*, the limits decided by OPEC's Member Countries, as the "primary elements" of the alleged conspiracy.  *Id.* ¶ 3.

The only specific acts attributed to OPEC comprise analyses of oil markets, preparation of a long-term strategy, organization of meetings, and provision of speakers at OPEC conferences.  *Id.* ¶¶ 6-9, 19-21.  The complaint seeks relief both against OPEC, in the form of a declaratory judgment that OPEC's conduct is in violation of U.S. antitrust laws, and against OPEC's Member Countries, in the form of an order enjoining OPEC and unnamed "co-conspirators," which are defined as "the present twelve member nations of OPEC," *id.* ¶ 16, from the alleged continuing violations of the antitrust laws.  *Id.* at 11-12.

## D.    Purported Service of the Complaint on OPEC

Paragraph 4 of the complaint alleges that "Austria must adhere to and abide by the

4

treaties of the European Union, including but not limited to its treaty with the United States concerning service of process." *Id.* ¶ 4. The complaint does not otherwise identify this alleged treaty.

Plaintiff has not filed any proof of service in the case docket, although it appears that Plaintiff has attempted to serve the complaint on OPEC. Based upon information and belief, Plaintiff's counsel, Mr. Larry Klayman, personally handed an envelope containing a summons, the complaint and other documents, all in English, to an Austrian police officer (not an employee of OPEC) who was present at the reception desk in the lobby of OPEC's headquarters in Vienna on May 14, 2012. Plaintiff also appears to have mailed a copy of the same documents to OPEC headquarters by Austrian surface mail from a Vienna hotel, without provision for a return receipt. *See* Hahnkamper Decl. ¶¶ 8, 18 and Exhs. 3, 4. OPEC is not aware of any other attempted service of the complaint on OPEC.

### E.    OPEC's Grounds for Dismissal of the Complaint

OPEC moves to dismiss the complaint with prejudice under Fed. R. Civ. P. 12(b)(5) for failure to serve process. Case law, including an order by the United States District Court for the Southern District of Florida dismissing a virtually identical complaint Freedom Watch filed against OPEC in 2008, demonstrates that Plaintiff's attempted service in this case is plainly invalid.[2] There is no internationally agreed means of service available in this case; any other available method of service under U.S. federal rules would be contrary to Austrian law, which among other things absolutely prohibits any service of process on OPEC without the express consent of the OPEC Secretary General. There have been no changes in U.S. or Austrian law

---

[2] Order Denying Motions for Default and Default Judgment; Dismissing Complaint Without Prejudice; Closing Case, *Freedom Watch, Inc. v. OPEC*, No. 08-cv-21630 (S.D. Fla. Dec. 22, 2008) (Exh. 1); *see also Prewitt Enters., Inc. v. OPEC*, 353 F.3d 916, 928 (11th Cir. 2003); *Prewitt Enters., Inc. v. OPEC*, 224 F.R.D. 497, 502 (N.D. Ala. 2002); *Int'l Ass'n of Machinists & Aerospace Workers v. OPEC* ("*IAM*"), 477 F. Supp. 553, 560 (C.D. Cal. 1979); *Melnitchenko v. OPEC*, No. 00CA3173 (D.C. Super. Ct.), Order of Aug. 22, 2000 (Exh. 2).

since the earlier cases were decided that could support a different legal conclusion.  Thus OPEC is effectively immune from service and from suit in the United States, consistent with the privileges and immunities that apply under international law to international organizations. Schwebel Op. ¶¶ 12-18.

OPEC also provides notice that it intends to raise the following additional grounds for dismissal of the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6):  (1) this Court lacks subject matter jurisdiction because Plaintiff's claims present a non-justiciable political question; (2) relief cannot be granted because Plaintiff's claims require the Court to sit in judgment on the validity of sovereign crude oil production decisions taken by OPEC Member Countries, which is barred by the act of state doctrine; (3) the complaint fails to satisfy the pleading standard established by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009); (4) Freedom Watch lacks antitrust standing; and (5) the Court lacks personal jurisdiction over OPEC.

## ARGUMENT

## I.    PLAINTIFF HAS NOT, AND CANNOT, VALIDLY SERVE PROCESS ON OPEC

Proper service of process is a prerequisite to the Court's exercise of personal jurisdiction over a defendant.  *Cambridge Holdings Grp., Inc. v. Fed. Ins. Co.*, 489 F.3d 1356, 1361 (D.C. Cir. 2007); *Koerner v. United States*, 246 F.R.D. 45, 47 (D.D.C. 2007).  Formal service of process, as opposed to mere notice, is required to assure that the Court properly may exercise its authority.  *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347, 119 S. Ct. 1322, 1325 (1999) ("An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."); *see also Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 65 (D.D.C. 2011) ("Proper service of process 'is not some mindless technicality.'") (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991)).  When its service is challenged, the plaintiff has the burden of establishing that service of process is valid.  *Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003).

Freedom Watch has been on notice since May 29, 2012 that OPEC challenges the validity of its attempted service of process on OPEC in Austria on May 14, 2012.  Yet Freedom Watch has not filed any proof of service in this case as required under the Federal Rules.  *See* Fed. R. Civ. P. 4(l)(1) ("Unless service is waived, proof of service must be made to the court.").

Absent any proof of service by Plaintiff, Defendant is forced to attempt to discern from Plaintiff's complaint and the actions of its counsel the possible grounds for service that Plaintiff may assert.  There appear to be three: (1) through an unnamed treaty between the European Union and the United States concerning service of process; (2) through personal delivery of the summons and complaint on OPEC at OPEC headquarters in Vienna; and (3) through the delivery

of a copy of the summons and complaint from a location in Vienna to OPEC headquarters via Austrian surface mail.  None of these methods meet the requirements for valid service on OPEC under U.S. or Austrian law.

###   A.   Rule 4 of the Federal Rules of Civil Procedure Governs Service of Process on OPEC in This Case

Fed. R. Civ. P. 4(h) governs service on OPEC, as an unincorporated association headquartered outside of the United States.  *Prewitt Enters., Inc. v. OPEC*, 353 F.3d 916, 921-22 & n.6 (11th Cir. 2003); *Prewitt Enters., Inc. v. OPEC*, 224 F.R.D. 497, 500 (N.D. Ala. 2002).[3] Rule 4(h)(2) governs service on an unincorporated association outside the United States "[u]nless federal law provides otherwise or the defendant's waiver has been filed."  Fed. R. Civ. P. 4(h). In this case, federal law does not provide otherwise, *Prewitt,* 353 F.3d at 922, and OPEC has not filed any waiver of service.  Therefore, according to Rule 4(h)(2), service may be accomplished "in any manner prescribed by Rule 4(f) for serving an individual, *except personal delivery under (f)(2)(C)(i)*."  Fed. R. Civ. P. 4(h)(2) (emphasis added).[4]

The available methods of service under Rule 4(f) (other than personal delivery) are either an internationally agreed means of service (Rule 4(f)(1)) or, in the absence of such an internationally agreed means, four alternative methods that are reasonably calculated to give notice and are either prescribed by, or not prohibited by, Austrian law.  Fed. R. Civ. P. 4(f)(2).[5]

---

[3] Other courts have questioned whether OPEC even is subject to suit in the United States.  *See IAM*, 477 F. Supp. at 560 (suggesting that OPEC could not ever be legally served with process); *see also Melnitchenko*, No. 00CA3173 (D.C. Super. Ct.), Order of Aug. 22, 2000, at 3 (Exh. 2) ("OPEC is entitled to sovereign immunity . . . and does not have the capacity to be sued in this court for the allegations made by Plaintiff.").

[4] On this basis alone, Plaintiff's attempt to serve OPEC by personal delivery is invalid.  In addition, however, direct service of legal process on OPEC without the consent of the Secretary General is prohibited by Austrian law, and in any event Plaintiff's personal delivery to an individual not an OPEC employee is invalid under Austrian and U.S. law.  *See* Hahnkamper Decl. ¶¶ 17-19.

[5] Fed. R. Civ. P. 4(f) provides that service "at a place not within any judicial district of the United States" may be made as follows:

**B.**     **OPEC Cannot Be Served Effectively By Any of the Methods Listed Under Rule 4(f)**

**1.**     **There Is No Available Internationally Agreed Means of Service in this Case**

The Eleventh Circuit Court of Appeals concluded in the *Prewitt* case in 2003 that there is

no internationally agreed means of service under Fed. R. Civ. P. 4(f)(1) that applies to service on

OPEC in Austria.  *See Prewitt*, 353 F.3d at 922 & n.10 (noting the parties agreed that there is no

internationally stipulated method of service and that there are no international agreements on

service of process to which both the United States and Austria are contracting parties).

Plaintiff's vague reference in its complaint to an unspecified treaty between the United States

and the European Union concerning service of process that purportedly binds Austria, Compl. ¶

4, fails to prove that there is now an internationally agreed method of service that was not

available in 2003 for the simple reason that no such treaty exists.

The attached Declaration of Wolfgang Hahnkamper, on whose expert testimony of

Austrian law the Eleventh Circuit relied in the *Prewitt* case, again demonstrates that there is no

agreed method of service of process under an international agreement that applies here.  While

---

(1)  by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2)  if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

    (A)  as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

    (B)  as the foreign authority directs in response to a letter rogatory or letter of request; or

    (C)  unless prohibited by the foreign country's law, by:

        (i)  delivering a copy of the summons and of the complaint to the individual personally; or

        (ii)  using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3)  by other means not prohibited by international agreement, as the court orders.

Austria is a party to the Hague Convention on Civil Procedure,[6] the United States is not. Hahnkamper Decl. ¶ 12.  Similarly, while the United States is a party to the Hague Service Convention,[7] Austria is not.  *Id.*  The 1928 Friendship, Trade and Consular Convention between Austria and the United States does not contain provisions related to mutual judicial assistance. *Id.*

As to Plaintiff's allusion to a European Union treaty concerning service of process that purportedly binds Austria, Dr. Hahnkamper notes that European Union cross-border civil litigation law addresses only intra-E.U. matters.  *Id.* ¶¶ 12, 14.  There is no treaty that regulates the service of court documents to which the United States and the European Union are parties; as Dr. Hahnkamper notes, "the EU has no mandate to conclude state treaties in this respect."  *Id.* ¶ 12.  In addition, the Austrian Government, in a Note Verbale dated June 21, 2012, confirms that there is no treaty between the European Union and the United States that supersedes Austrian law requirements for service of process on OPEC.  Note Verbale of the Austrian Federal Ministry for European and International Affairs dated June 21, 2012 [hereinafter "June 21, 2012 Note Verbale"] (El-Badri Decl. Exh. 7), at 2; Hahnkamper Decl. ¶ 12.

In view of this authoritative showing, and given the lack of any proof of service in this case, Plaintiff's vague reference in its complaint to an unnamed E.U. – U.S. treaty "concerning service of process," Compl. ¶ 4, is plainly insufficient to carry its burden of proving that it employed an internationally agreed method of service that overrides Austrian law in this case.

### 2.    The Remaining Service Methods Listed in Rule 4(f) Are Prohibited by Austrian Law

In the absence of any internationally agreed means of service, Rule 4(f) provides four

---

[6] Hague Convention on Civil Procedure, *opened for signature* Mar. 1, 1954, 286 U.N.T.S. 265.

[7] Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *opened for signature* Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

alternative methods of service that all require reference to, and compliance with, Austrian law: (1) service as prescribed by Austrian law for service in Austrian courts of general jurisdiction, Fed. R. Civ. P. 4(f)(2)(A); (2) service as directed by Austrian authorities in response to letters rogatory, Fed. R. Civ. P. 4(f)(2)(B); (3) service by any form of mail that the clerk addresses and sends and that requires a signed receipt, "unless prohibited by" Austrian law, Fed. R. Civ. P. 4(f)(2)(C)(ii); or (4) service by a means not prohibited by international agreement that the court orders.  Fed. R. Civ. P. 4(f)(3).  The use of any of these methods to serve OPEC in this case would violate and cause serious offense to Austrian law.  Thus, service on OPEC cannot be accomplished because it contravenes the express provisions of Rule 4(f) and the principles of comity that Rule 4 embodies.

> **a.**     **Austrian Law Requires the Assistance of the Austrian Foreign Ministry to Serve OPEC**

Under Austrian law, service of process is a governmental act, *i.e.*, an exercise of sovereign authority governed by norms of public law, including public international law. Hahnkamper Decl. ¶¶ 10-11.  Following the general principle of public international law that sovereign acts of a state in foreign territory are not permitted, Austrian law directs that service of legal documents originating outside of Austria must be accomplished either in accordance with existing international conventions, or in their absence, in accordance with the provisions of Austrian law.  *Id.* ¶¶ 10-11, 13.  Because, as noted above, there is no treaty between the United States and Austria or between the United States and the European Union that regulates service of process, service of U.S. legal documents in Austria must be performed in accordance with the Austrian Code of Civil Procedure.  *Id.* ¶¶ 12-13 and Exh. 6.  Absent the involvement of Austrian courts, Austrian law not only prohibits the direct transmission of a complaint to a party residing in Austria by personal delivery or mail, *id.* ¶ 15, but also views such attempts at direct service as

an infringement of Austrian sovereignty.  Note Verbale from the Austrian Federal Ministry for Foreign Affairs dated Jan. 7, 2003 (Hahnkamper Decl. Exh. 7) at ¶ 1.

Moreover, with regard to an international organization that holds privileges and immunities under international law, Austrian law permits service only through the assistance of the Austrian Federal Ministry for European and International Affairs ("Austrian Federal Ministry").  Hahnkamper Decl. ¶ 16.  OPEC is an international organization holding privileges and immunities under international law.  *Id.*; *see also* June 21, 2012 Note Verbale (El-Badri Decl. Exh. 7) at 1; Schwebel Op. ¶ 17.  Therefore, service of process on OPEC must be made through the Austrian Federal Ministry, without exception.  Hahnkamper Decl. ¶ 16.  The Austrian Federal Ministry's June 21, 2012 Note Verbale confirms this conclusion:  "the service of legal documents on foreign citizens or international organisations who are entitled to privileges and immunities shall be carried out with the assistance of the Austrian Federal Ministry for European and International Affairs. *This excludes any other form of service of legal documents on such international organizations, including OPEC.*"  June 21, 2012 Note Verbale (El-Badri Decl. Exh. 7) at 1 (emphasis added).

### b.     Austrian Law Requires That the Secretary General of OPEC Expressly Consent to Any Service of Process on OPEC

The 1974 OPEC Headquarters Agreement between the Republic of Austria and OPEC, which was adopted by resolution of the Austrian Parliament, is both a law and a state treaty of Austria, and as such was published in the Austrian Official Gazette.  Hahnkamper Decl. ¶ 17.  Formal publication in the Austrian Official Gazette is a constitutional requirement for the entry into full legal force of Austrian laws and state treaties.  *Id.*; June 21, 2012 Note Verbale (El-Badri Decl. Exh. 7) at 1-2.  Consequently, the OPEC Headquarters Agreement comprises an integral part of Austrian law.  June 21, 2012 Note Verbale (El-Badri Decl. Exh. 7) at 2; *see also*

*Prewitt,* 353 F.3d at 924 & n.13 (agreeing with the district court that the OPEC Headquarters agreement "has been incorporated into Austrian law").

Article 5(2) of the OPEC Headquarters Agreement prohibits service of legal process within OPEC's headquarters seat without the express consent of OPEC's Secretary General: "The service of legal process, including seizure of private property, shall not take place within the headquarters seat except with the express consent of, and under conditions approved by, the Secretary General."  OPEC Headquarters Agreement (El-Badri Decl. Exh. 3) art. 5(2); *see also* June 21, 2012 Note Verbale (El-Badri Decl. Exh. 7) at 1-2.[8]  Article 5(2) resembles provisions in other headquarters agreements between the Austrian Government and international organizations based in Vienna.   Hahnkamper Decl. ¶ 17(c).  The prohibition in Article 5(2) applies to any service of process on OPEC, even service through the Austrian government.  *See id.* ¶ 17(e) ("Based on Article 5 of the OPEC Headquarters Agreement, the Republic of Austria is itself prohibited from serving documents on OPEC in either domestic or foreign litigations without the consent of the Secretary General of OPEC.").

Austrian law thus (1) prohibits direct service of process in foreign litigation by a private party, (2) requires that service of process on OPEC as an international organization be accomplished only with the assistance of the Austrian Federal Ministry, and (3) requires that any service of process attempted on OPEC in its headquarters seat, even with the assistance of the Austrian Federal Ministry, must have the express consent of OPEC's Secretary General. According to the Austrian Federal Ministry, "any form of service on OPEC at its headquarters in Vienna that is not effectuated in accordance with the above-mentioned procedure is to be considered contrary both to Austrian an[d] to international law.  Such service has to be regarded

---

[8] Article 2 of the OPEC Headquarters Agreement defines the headquarters seat as "the permanent headquarters of OPEC" and "any building outside the headquarters seat which is used with the concurrence of the Government for meetings convened by OPEC."  OPEC Headquarters Agreement (El-Badri Decl. Exh. 3), art. 2.

as invalid and, therefore, also as 'prohibited by Austrian law' . . . ."  June 21, 2012 Note Verbale

(El-Badri Decl. Exh. 7) at 2.

> ### c.     Austrian Law Prohibits Personal Delivery and Mail Service on OPEC as Attempted by Freedom Watch

The only available facts regarding Plaintiff's attempted service on OPEC indicate that

Freedom Watch as a private plaintiff attempted to serve process from a U.S. lawsuit directly on

OPEC in Austria.  There is no evidence in this case that Freedom Watch sought the assistance of

the Austrian Federal Ministry or requested the consent of OPEC's Secretary General.  To the

contrary, OPEC's Secretary General states: "In my capacity as Secretary General of OPEC, I

have never consented to nor have I been asked to consent to service of process on OPEC of any

complaint filed against it.  Specifically, I did not and do not consent to the plaintiff's attempted

service of process in this case."  El-Badri Decl. ¶ 15.

Based on this evidence, Freedom Watch's attempt to serve OPEC by direct personal

delivery and by Austrian mail violates at least three prohibitions of Austrian law: the prohibition

on direct service of process from abroad by private plaintiffs, the prohibition of direct service of

process on OPEC as an international organization, and the specific prohibition in the OPEC

Headquarters Agreement against any service of process on OPEC without the express consent of

OPEC's Secretary General.  "Accordingly, service of process as done in this case was invalid

and expressly prohibited by Austrian law."  Hahnkamper Decl. ¶ 17(f).

Plaintiff's attempted service on OPEC also is invalid and ineffective under Fed. R. Civ.

P. 4(f)(2), because the methods listed in that rule must be consistent with Austrian law (*e.g.*,

service as provided in Austrian courts of general jurisdiction, or as the Austrian government

directs for letters rogatory in Fed. R. Civ. P. 4(f)(2)(A) and (B)), or not prohibited by Austrian

law (*e.g.*, service by mail in Fed. R. Civ. P. 4(f)(2)(C)(ii)).  Plaintiff's attempt to serve OPEC

directly by personal delivery and Austrian mail, means that are prohibited by Austrian law, plainly fail to meet the requirements of Rule 4(f)(2).  *See Prewitt*, 353 F.3d at 924 (finding that service on OPEC by registered mail was prohibited by Austrian law and therefore not effective under Fed. R. Civ. P. 4(f)(2)(C)(ii)); Order Denying Motion for Reconsideration, *Freedom Watch, Inc. v. OPEC*, No. 08-cv-21630 (S.D. Fla. Feb. 26, 2009) (Exh. 3) (holding that Freedom Watch's attempted service on OPEC by personal delivery is ineffective because such service is prohibited by Austrian law).

Moreover, even if service by personal delivery were not already prohibited in this case by operation of Fed. R. Civ. P. 4(h) and Austrian law,[9] Plaintiff's attempted personal delivery would still be invalid because Plaintiff's counsel handed the documents to an individual who is not even an employee of OPEC and therefore does not qualify as a substitute recipient of service under Austrian law.  Hahnkamper Decl. ¶ 19.  Attempted service of process by means of delivery to a non-employee of the party being served also is ineffective under U.S. law.[10]  Plaintiff's attempted service by Austrian mail similarly would be ineffective even if not already prohibited by Austrian law, because mail sent by a private party from an address in Vienna by surface mail without return receipt does not even comply with the terms of the applicable section of Rule 4(f).  *See* Fed. R. Civ. P. 4(f)(2)(C)(ii) (referring to "any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt").

---

[9] As discussed above, Fed. R. Civ. P. 4(h)(2), which governs the possible methods of service on OPEC as an unincorporated association located outside a judicial district in the United States, provides that service may be made "in any manner prescribed by Rule 4(f) for serving an individual, *except for personal delivery under (f)(2)(C)(i)."* (Emphasis added).

[10] *See Baade v. Price*, 175 F.R.D. 403, 405 (D.D.C. 1997) (holding service insufficient when a person who received service of process was not an employee of the party); *Estate of Klieman v. Palestinian Auth.*, 467 F. Supp. 2d 107, 114 (D.D.C. 2006) (finding no proper service where employee who received service of process was not an authorized agent for service of process and did not represent that he was authorized to receive service); *see also Williams*, 792 F. Supp. 2d at 66 (holding that plaintiff must "use due diligence before service of process to determine the proper agent and to conform to the requirements of the rule" and that "failure to disavow authority to accept service of process . . . does not demonstrate that one represented herself as having authority") (internal quotation marks and citation omitted).

### d.   There Is No Other Method of Service Under Rule 4(f) That Accords With Austrian Law

There is not any method of service on OPEC that could be ordered by the Court pursuant to Rule 4(f)(3)[11] that would not cause serious offense to Austrian law by circumventing the requirement for express consent by OPEC's Secretary General.  The 1993 Advisory Committee Notes to Rule 4(f)(3) emphasize that when considering alternative methods of service, courts should make "an earnest effort . . . to devise a method of communications that . . . minimizes offense to foreign law."  *Prewitt*, 353 F.3d at 927; *see also FTC v. Compagnie de Saint-Gobain-Point-A-Mousson*, 636 F.2d 1300, 1314 (D.C. Cir. 1980) (stressing the need for "judicial sensitivity to foreign territorial sovereignty when scrutinizing particular methods of overseas service").  Any court-ordered method of service that would result in service on OPEC without its consent, however, "would constitute a substantial affront to Austrian law."  *Prewitt*, 353 F.3d at 927.  The likelihood of such an affront can be seen from the Note Verbale delivered by the Austrian government to the United States government regarding service of process in the U.S. Ski Train litigation in 2002, which did not even involve the express consent requirement of the OPEC Headquarters Agreement:

> As a matter of international law, the Republic of Austria, like many other European civil law countries, maintains the view that the service of legal documents is a governmental act performed in the exercise of sovereign authority.  As a consequence, in the absence of applicable international agreements or unilateral Austrian acts authorizing such service, *Austria regards the direct service of foreign legal documents in her territory by foreign authorities or by private individuals without the assistance or explicit or implicit consent of the competent Austrian authorities as an infringement of her sovereignty.*

Note Verbale from the Austrian Federal Ministry for Foreign Affairs dated Jan. 7, 2003

---

[11] *See* Fed. R. Civ. P. 4(f)(3) (referring to service by other means not prohibited by international agreement, as the court orders).

(Hahnkamper Decl. Exh. 7) at ¶ 1 (emphasis added).

The Federal Rules embody respect for the application of foreign law in foreign sovereign territory. *See Prewitt*, 224 F.R.D. at 502 ("The rules reflect a clearly expressed diplomatic policy choice of Congress to respect the normative and, ultimately, the legislative, decisions of foreign sovereigns."). The protection that Austrian law accords to OPEC in Austria is consistent with OPEC's status as an international organization that has privileges and immunities under international and Austrian law. Schwebel Op. ¶¶ 12-19; *see also Prewitt*, 353 F.3d at 928. The necessary result of these factors in this case, as in the *Prewitt* case, is that "there are no means available for service upon OPEC under the Federal Rules of Civil Procedure." *Prewitt*, 353 F.3d at 919.

### C.  This Court Should Dismiss Freedom Watch's Complaint With Prejudice

OPEC urges this court to dismiss Plaintiff's complaint with prejudice for failure to serve process for three reasons:  first, the only possible methods of service Plaintiff can claim to have used are either without any factual support (service by means of an internationally agreed means) or specifically prohibited by Austrian law (service by personal delivery or mail) and therefore ineffective under Rule 4(f).  Second, the evidence of Austrian law demonstrates that there is no other available method of service that could be employed in this case consistent with Rule 4(f), because any alternative method of service would seriously offend Austrian law.  Third, Freedom Watch was fully aware at the time it filed its complaint in this Court that its attempted service of process in this case is prohibited by Austrian law and that there are no means available for service on OPEC under the Federal Rules, because its most recent complaint against OPEC was dismissed in 2008 for those very reasons.

In the prior *Freedom Watch, Inc. v. OPEC* case, the United States District Court for the Southern District of Florida denied reconsideration of its earlier decision to dismiss Freedom

Watch's complaint against OPEC because (1) service of process by direct personal delivery on OPEC, like service of process by mail, is prohibited by Austrian law, and therefore ineffective under Fed. R. Civ. P. 4(f), and (2) service of process absent the express consent of the Secretary General of OPEC would constitute an affront to Austrian law, and therefore was not in accordance with Fed. R. Civ. P. 4(f)(3).  Order Denying Motion for Reconsideration, *Freedom Watch, Inc. v. OPEC*, No. 08-cv-21630 (S.D. Fla. Feb. 26, 2009) (Exh. 3), at 2-5.  The complaint that Freedom Watch filed in this Court is virtually identical to that filed in the Southern District of Florida, as is the attempted service by personal delivery on OPEC at its headquarters in Vienna.

In view of Plaintiff's consistent failure even to attempt to serve OPEC as required by Rule 4(f) and the impossibility of doing so because Austrian law requires the express consent of OPEC's Secretary General, who has never given such consent and expressly does not consent in this case, the Court should dismiss the complaint with prejudice under Fed. R. Civ. P. 12(b)(5) for failure to serve process.

## II.   OPEC INTENDS TO RAISE ADDITIONAL DEFENSES OF LACK OF JURISDICTION, LACK OF STANDING, AND FAILURE TO STATE A CLAIM IN THIS CASE

As directed by the Court's August 7, 2012 Minute Order, OPEC hereby provides notice that it intends to raise the following additional grounds for dismissal of Freedom Watch's complaint, to be briefed as scheduled by the Court, should the Court deny OPEC's motion to dismiss for lack of service of process.

### A.   The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) Because Plaintiff's Claims Present a Non-Justiciable Political Question

The political question doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution

to the halls of Congress or the confines of the Executive Branch."  *El-Shifa Pharm. Indus. Co. v. U.S.*, 607 F.3d 836, 840 (D.C. Cir. 2010) (internal citations and quotation marks omitted). Plaintiff's complaint attacks the structure and operation of OPEC and its Member Countries regarding production of petroleum.  Compl. ¶¶ 3, 16, 43 and pp. 11-12.  In *Spectrum Stores, Inc. v. Citgo Petrol. Corp.*, 632 F.3d 938 (5th Cir. 2011), *cert. denied* 132 S. Ct. 366 (2011),[12] the defendants demonstrated and the Fifth Circuit recently held that claims challenging the structure of OPEC and its relation to the worldwide production of petroleum "deeply implicate concerns of foreign and defense policy, concerns that constitutionally belong in the executive and legislative departments," not in the courts.  *Id.* at 943.[13]  The Fifth Circuit dismissed the claims in *Spectrum Stores* because "the matter before us plainly constitutes a political question."  *Id.* at 950.  The same result should apply in this case.

**B.  The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) Because the Act of State Doctrine Bars Consideration of Plaintiff's Claims**

The "primary elements" of Plaintiff's antitrust claims are the crude oil production decisions of OPEC Member Countries.  Comp. ¶¶ 3, 23.  The complaint asks the Court to issue an order enjoining OPEC's Member Countries from alleged violations of the antitrust laws.  *Id.* ¶ 16, pp. 11-12.  U.S. courts consistently have held, however, that OPEC Member Country crude oil production decisions regulating the level of production of their most precious natural resource comprise sovereign acts of state and that the act of state doctrine bars consideration of claims,

---

[12] Although captioned *Spectrum Stores, Inc. v. Citgo Petrol. Corp.* in the Fifth Circuit's decision, the case was in fact a consolidation of 6 different cases:  (1) *Fast Break Foods, LLC v. Saudi Arabian Oil Co.*, Civ. No. 4:07-cv-4409 (N.D. Ill.); (2) *Spectrum Stores, Inc., v. CITGO Petrol. Corp.*, Civ. No. 4:06-cv-3569 (S.D. Tex.); (3) *Green Oil Co. v. Saudi Arabian Oil Co.*, Civ. No. 4:07-cv-4413 (N.D. Ill.); (4) *Countywide Petrol. Co. v. Petroleos de Venezuela S.A.*, Civ. No. 4:07-cv-4415 (N.D. Oh.); (5) *Central Ohio Energy, Inc. v. Saudi Arabian Oil Co.*, Civ. No. 4:08-cv-00241 (N.D. Ill.); and (6) *Gokey v. CITGO Petrol. Corp.*, Civ. No. 3:08-cv-1095 (S.D. Tex.).

[13] The dismissal in *Spectrum Stores* was based on a record that included a Chronology of the International Oil Policy of the United States (Exh. 4), which summarized more than 30 years of policy statements by the Executive Branch reflecting a commitment to cooperation rather than confrontation with foreign oil producers.

like Plaintiff's, that require a court to sit in judgment on those acts.  *See Int'l Ass'n of Machinists & Aerospace Workers v. OPEC* ("*IAM II*"), 649 F.2d 1354, 1361 (9th Cir. 1981) (dismissing price fixing complaint against OPEC on the basis of the act of state doctrine); *see also Spectrum Stores*, 632 F.3d at 954, 955 (dismissing price fixing complaints against foreign oil producers because adjudication would call into question the acts of foreign governments regarding exploitation of their natural resources and the relief sought was to effectively dismantle their chosen means of exploiting their natural resources).[14]

### C.   The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) Because It Fails to Allege a Plausible Conspiracy Involving OPEC

The Supreme Court in *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, warned that vague and facially implausible antitrust complaints must be dismissed at the outset.  *See also Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1951.  Here, the complaint offers no plausible explanation for how OPEC should somehow face antitrust liability for the actions of its Member Countries – sovereign acts that, as shown above, cannot be subject to antitrust scrutiny.  Instead, the complaint resorts to a hodgepodge of allegations ranging from the claim that OPEC is a "terrorist" organization "bent on furthering radical Islam's war on the western Judeo-Christian civilization;"[15] to the claim that OPEC (an organization in Vienna) somehow has "entered the United States" to "bring[] to fruition its unlawful scheme to sell gasoline and other petroleum products to customers in the United States at uncompetitive prices," Compl. ¶ 9; to the claim that OPEC is conspiring with its sovereign members to raise gasoline prices in the United States,

---

[14] In *Spectrum Stores*, the Fifth Circuit accepted *amicus* briefs from thirteen parties urging affirmance of the dismissal under the act of state and political question doctrines, including briefs from the United States Government (Exh. 5), the U.S. Chamber of Commerce (Exh. 6), Algeria (Exh. 7), Indonesia (Exh. 8), Iraq (Exh. 9), Kuwait (Exh. 10), Mexico (Exh. 11), Nigeria (Exh. 12), Qatar (Exh. 13), Russia (Exh. 14), Saudi Arabia (Exh. 15), United Arab Emirates (Exh. 16), and Venezuela (Exh. 17).

[15] Compl. ¶ 1.  This is exactly the type of scandalous and impertinent material that should be stricken under Fed. R. Civ. P. 12(f).

Compl. ¶ 2, to the claim that OPEC has joined with unnamed "co-conspirators" – identified only as "privately owned oil companies" – to raise gasoline prices, Compl. ¶ 16.   None of these baseless allegations states a plausible antitrust conspiracy under *Twombly*.

**D.      The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) For Lack of Antitrust Standing**

To the extent that Plaintiff is seeking to assert a damages claim here (and it is not clear that it is),[16] such a claim is barred by the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061 (1977), which held that indirect purchasers such as Plaintiff lack antitrust standing.  Plaintiff also lacks standing to seek injunctive relief, given its remote relationship to OPEC – an organization based in Vienna that does no business in the United States and does not participate in the market in which Plaintiff claims to have been injured.  *See Associated General Contractors v. California State Council of Carpenters* ("*A.G.C.*"), 459 U.S. 519, 537-46, 103 S. Ct. 897, 908-12 (1983); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 939-41 (N.D. Ill. 2009), *rev'd on other grounds sub nom Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845 (7th Cir. 2012); *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1301-02 (S.D. Cal. 2009).

**E.      The  Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) For Lack of Personal Jurisdiction**

Plaintiff's complaint also fails for lack of personal jurisdiction over OPEC.  As an inter-governmental organization headquartered in Vienna, Austria, OPEC has virtually no contacts with the United States, much less this District.  *See* El-Badri Decl. ¶¶ 13, 18.  First, personal jurisdiction is lacking in light of Plaintiff's failure properly to serve OPEC with the complaint. *See Prewitt*, 353 F.3d at 921.  But even if service of process could be accomplished, dismissal is

---

[16] Freedom Watch claims only to "bring this action . . . for injunctive relief," but does not expressly disavow a damages claim.  Compl. ¶ 35.

appropriate in light of OPEC's lack of minimum contacts with the District of Columbia.  *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000); *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).  OPEC does not "transact business" within the District of Columbia under D.C. Code Ann. § 13-423(a)(1); indeed, OPEC transacts almost no business within the United States, does not have offices in the District, does not advertise in the District, does not have agents in the District, and has no significant contacts in the District.  *See* El-Badri Decl. ¶ 18.  Accordingly, personal jurisdiction is lacking.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff's complaint dated May 7, 2012 should be dismissed with prejudice.

Respectfully submitted on August 21, 2012:

/s/  Carolyn B. Lamm
_____

Carolyn B. Lamm (D.C. Bar No. 221325)
Anne D. Smith (D.C. Bar No. 930867)
Hansel T. Pham (D.C. Bar No. 489203)
WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
Email:  clamm@whitecase.com
Email:  asmith@whitecase.com
Email:  hpham@whitecase.com

*Attorneys for the Organization of the Petroleum Exporting Countries*

Robert A. Milne
Raj S. Gandesha
Bryan D. Gant
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113
Email:  rmilne@whitecase.com
Email:  rgandesha@whitecase.com
Email:  bgant@whitecase.com