UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
FREEDOM WATCH, INC.,                )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 12-731 (RBW)
                                    )
ORGANIZATION OF PETROLEUM           )
EXPORTING COUNTRIES,                )
                                    )
            Defendant.              )
_____)

## MEMORANDUM OPINION

Plaintiff Freedom Watch, Inc. ("Freedom Watch") instituted this action against the Organization of Petroleum Exporting Countries ("OPEC") on May 7, 2012, alleging violations of the Sherman Act, 15 U.S.C. § 1 (2006), and the Clayton Act, 15 U.S.C. §§ 15, 26 (2006).  See Complaint ("Compl.") ¶¶ 1-2.  Currently before the Court is OPEC's motion to dismiss for lack of service of process pursuant to Federal Rule of Civil Procedure 12(b)(5).  Upon careful consideration of the parties' submissions,[1] the Court will grant OPEC's motion for the following reasons.

Federal Rule of Civil Procedure 4(c) provides that "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service."  "[F]ederal courts lack the power to assert personal jurisdiction over a defendant 'unless the procedural requirements of effective

---

[1] In addition to the filings already identified, the Court considered the following submissions and their supporting exhibits in rendering its decision: the Memorandum of Points and Authorities in Support of Defendant OPEC's Motion to Dismiss for Lack of Service of Process, with Notice of Additional Defenses of Lack of Jurisdiction, Lack of Standing, and Failure to State a Claim ("Def.'s Mem."); the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss for Lack of Service of Process ("Pl.'s Opp'n"); and the Defendant's Memorandum of Points and Authorities in Reply in Support of its Motion to Dismiss for Lack of Service of Process ("Def.'s Reply").

service of process are satisfied.'"  Mann v. Castiel, 681 F.3d 368, 372 (D.C. Cir. 2012) (citation omitted).  Rule 12(b)(5), in turn, allows a party to move to dismiss a complaint for "insufficient service of process."  Fed. R. Civ. P. 12(b)(5).  When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff has the burden of establishing the validity of service of process; "'to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law.'"  Light v. Wolf, 816 F.2d 746, 751 (D.C. Cir. 1987) (citation omitted).

Rules 4(f) and 4(h)(2) collectively govern the service of international entities located outside of the United States.  Rule 4(h)(2) provides:

> **(h) Serving a Corporation, Partnership, or Association.** Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> * * *
>
> (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

Fed. R. Civ. P. 4(h)(2).  Rule 4(f) states:

> **(f) Serving an Individual in a Foreign Country.** Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
>> (C) unless prohibited by the foreign country's law, by:
>
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

As OPEC asserts and Freedom Watch does not dispute, see Def.'s Mem. at 8; Pl.'s Opp'n at 3-5, this case is governed by Rule 4(h)(2) because (1) OPEC is (i) an unincorporated association that is (ii) subject to suit under a common name, and (iii) headquartered outside of the United States (i.e., in Austria); (2) no waiver of service has been filed; and (3) federal law does not provide otherwise. See Prewitt Enters., Inc. v. OPEC, 353 F.3d 916, 921-22, 921 n.6 (11th Cir. 2003) (reaching same conclusion). Consequently, Freedom Watch has the burden of showing that it effectuated service on OPEC "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Attempting to satisfy this burden, Freedom Watch contends that it perfected service of process by "personal service on an agent on behalf of OPEC" and by "mailing the complaint" to OPEC. Pl.'s Opp'n at 4; see id., Exhibit ("Ex.") 1 (Proof of Service) (stating that "Frederick Luger" accepted service of process on OPEC's behalf on May 14, 2012, at OPEC's headquarters in Vienna, Austria).

Freedom Watch's position is significantly undermined by the Eleventh Circuit's decision in Prewitt. There, the court surveyed the applicable legal authorities (both foreign and domestic)

and concluded that service on OPEC without its consent was ineffective under Rule 4 because "no other means of service has been 'otherwise provided by federal law'"; there was no "'internationally agreed means reasonably calculated to give notice such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents'"; and, most notably, "service on OPEC [by registered mail] was prohibited by the law of Austria." Prewitt, 353 F.3d at 922-24 (quoting Fed. R. Civ. P. 4(f)).  The same is true here.  OPEC has not filed a waiver of service, and Freedom Watch has not shown that there are alternative means of serving OPEC provided by federal law, or that there are "internationally agreed means . . . reasonably calculated to give notice such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f).  Furthermore, as in Prewitt, OPEC has provided evidence that "Austrian law specifically prohibits (1) direct service from abroad by private parties; (2) service of process on an international organization without the involvement of the Austrian Federal Ministry; and (3) any service of process on OPEC without the express consent of the Secretary General of OPEC." Def.'s Reply at 5; Def.'s Mem., Ex. B (Declaration of Wolfgang Hahnkamper) ¶¶ 13-18; Def.'s Mem., Ex. A (Declaration of Abdalla Salem El-Badri), Ex. 7 (June 21, 2012 Note Verbale) at 1-2.[2]  It therefore follows that Freedom Watch, like the plaintiff in Prewitt, has failed to perfect service of process on OPEC in accordance with Rule 4(f).

Freedom Watch attempts to minimize the impact of Prewitt to no avail.  Initially, it tries to distinguish the case by arguing that the plaintiff in Prewitt only served OPEC by registered mail, whereas Freedom Watch has made "further efforts to ensure that OPEC was given notice . . . , including personal service" on OPEC's purported agent. Pl.'s Opp'n at 4.  But Prewitt's

---

[2] "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.  Freedom Watch does not challenge OPEC's evidence concerning Austrian law, so the Court will accept it as accurate.

holding was not limited to circumstances where the plaintiff attempted to effect service of process by mail as opposed to personal delivery. Rather, the court held in broad terms that "there [were] no means available for service upon OPEC under the Federal Rules of Civil Procedure." Prewitt, 353 F.3d at 919 (emphasis added). Freedom Watch also notes that Prewitt is not binding on this Court and suggests, without elaboration, that the case should not be followed here. Pl.'s Opp'n at 4. The Court, however, views Prewitt's reasoning as highly persuasive and chooses to adopt it in this case. Cf. Youngbey v. March, 676 F.3d 1114, 1117 (D.C. Cir. 2012) (case law from "sister circuits" constitutes "persuasive authority").

Freedom Watch raises several other arguments that the Prewitt court considered and rejected. Compare Pl.'s Opp'n at 6-7 (arguing that (1) service of process should be deemed effective solely because OPEC has "actual notice" of the lawsuit, and (2) the Court should permit alternative methods for service of process pursuant to Rule 4(f)(3)), with Prewitt, 353 F.3d at 925, 928 (rejecting identical arguments). Again, the Court does not see, nor has Freedom Watch presented, any reason to stray from Prewitt's reasoning here.

Freedom Watch does raise one contention that was not addressed in Prewitt and thus warrants brief mention: that "OPEC has . . . been served through its attorneys who are located in Washington, D.C." Pl.'s Opp'n at 8. This argument fails for several reasons. For starters, Freedom Watch has not filed proof of service of process on OPEC's attorneys with the Court. And, even if it had, OPEC has submitted a supplemental declaration stating that it "never authorized White & Case[, its law firm, ]to accept or receive service of process on its behalf, and specifically has not authorized White & Case to accept or receive service of process from [Freedom Watch] in this case." Def.'s Reply, Supplemental Declaration of Abdalla Salem El-Badri ¶ 4. Absent such authorization, OPEC could not have been validly served through its

counsel. See Williams v. GEICO Corp., 792 F. Supp. 2d 58, 65 (D.D.C. 2011) ("Delivering a summons and complaint to a corporate representative who is not an officer, a managing or general agent, or an agent authorized to accept service fails to satisfy the requirements of Rule 4(h)." (emphasis added)).[3]

For the foregoing reasons, the Court concludes that Freedom Watch has failed to carry its burden of establishing that it validly served process on OPEC. The Court will therefore grant OPEC's motion to dismiss pursuant to Rule 12(b)(5), and dismiss the complaint without prejudice.[4]

**SO ORDERED** this 15th day of January, 2013.

REGGIE B. WALTON
United States District Judge

---

[3] Freedom Watch further argues that dismissing this case for lack of service of process would "contravene public policy" and render antitrust laws "meaningless." Pl.'s Opp'n at 5, 8-10. But these arguments do not justify ignoring the Federal Rules of Civil Procedure. Nor does Freedom Watch accord sufficient weight to the underlying purposes of service of process, which, "'under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant.'" Mann, 681 F.3d at 372 (quoting Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999)).

[4] Although OPEC urges dismissal of the complaint with prejudice, Def.'s Mem. at 17, the Court declines to do so because "a dismissal for insufficient service of process is not a disposition on the merits." Candido v. Dist. of Columbia, 242 F.R.D. 151, 157 n.6 (D.D.C. 2007). Rather, it is effectively a dismissal for lack of personal jurisdiction, see Mann, 681 F.3d at 372, and, "under Rule 41(b), dismissals for lack of personal jurisdiction should be made 'without prejudice,'" Intera Corp. v. Henderson, 428 F.3d 605, 620 (6th Cir. 2005).