UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREEDOM WATCH, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:12-CV-00731 (RBW) |
| ORGANIZATION OF PETROLEUM EXPORTING COUNTRIES, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Freedom Watch, Inc ("Freedom Watch") instituted this action against the Organization of the Petroleum Exporting Countries ("OPEC") on May 7, 2012, alleging violations of the Sherman Act, 15 U.S.C. § 1 (2006), and the Clayton Act, 15 U.S.C. §§ 15, 26 (2006). See Complaint ("Compl.") ¶¶ 1–2. On January 15, 2013, this Court granted OPEC's motion to dismiss for lack of service of process pursuant to Federal Rule of Civil Procedure 12(b)(5), finding that Freedom Watch's attempts to serve OPEC violated Austrian law, see Freedom Watch, Inc. v. OPEC, 288 F.R.D. 230, 231, 233 (D.D.C. 2013). The District of Columbia Circuit affirmed this Court's dismissal but remanded the case with instructions for the Court "to consider Freedom Watch's request under Rule 4(f)(3) to authorize alternative methods of service process on OPEC." Freedom Watch, Inc. v. OPEC, 766 F.3d 74, 76 (D.C. Cir. 2014); see also id. at 78. Currently before the Court is Freedom Watch's Motion for Leave to Serve [OPEC]'s United States Counsel Pursuant to the Court of Appeals' Decision to Vacate and

1

Remand the District Court's Ruling[1] ("Mot."). Upon careful consideration of the parties' submissions,[2] the applicable legal authority, and the record in this case, the Court concludes for the following reasons that Freedom Watch's motion must be denied.

## I.   BACKGROUND

Freedom Watch attempted to serve OPEC, an unincorporated "intergovernmental organization whose membership consists of twelve petroleum-exporting nations," Freedom Watch, 766 F.3d at 77, by personal service on an OPEC agent and by mailing a copy of its complaint to OPEC headquarters, see Freedom Watch, 288 F.R.D. at 232–33. On January 15, 2013, this Court granted OPEC's motion to dismiss, finding that Freedom Watch failed to properly serve process on OPEC. Id. Freedom Watch now requests that this Court permit it to circumvent Austrian law requiring that service of process "be carried out with the assistance of the Austrian Federal Ministry for European and International Affairs," Opp'n, Second Supplemental Declaration of Abdalla Salem El-Badri ("El-Badri Decl."), Exhibit ("Ex.") 1, 5 December 2014 Note Verbale ("Note Verbale") at 1, and instead permit it to serve OPEC's United States Counsel, White & Case, see Mot. at 1.

---

[1] The title of this motion misconstrues what actually occurred on appeal. As just noted, what the Court of Appeals did was affirm this Court's ruling that "the methods of service attempted by Freedom Watch failed to satisfy the federal rules," Freedom Watch, 766 F.3d at 78, but remanded the case to this Court to consider Freedom Watch's request to serve OPEC's United States counsel pursuant to Rule 4(f)(3), a request that was not appropriately made to this Court by Freedom Watch prior to the appeal, see id. at 81 ("Freedom Watch did not file a motion or submit a proposed order [to the district court for consideration]."); see also id. 85 (Wilkins, J., dissenting) ("[T]he District Court did not deem something a motion where no motion was made in a form that complies with the rules.").

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision:  (1) the Defendant's Memorandum in Opposition to Freedom Watch's Motion for Leave to Serve Defendant's United States Counsel Pursuant to the Court of Appeals' Decision to Vacate and Remand the District Court's Ruling ("Opp'n"); (2) the plaintiff's Reply in Support of Motion for Leave to Serve Defendant's United States Counsel Pursuant to the Court of Appeals' Decision to Vacate and Remand the District Court's Ruling ("Reply"); and (3) the Defendant's Sur-Reply to Freedom Watch's Motion for Leave to Serve Defendant's United States Counsel Pursuant to the Court of Appeals' Decision to Vacate and Remand the District Court's Ruling ("Sur-Reply").

## II.     LEGAL ANALYSIS

Rule 4(h) governs the service of unincorporated international associations such as OPEC, see Freedom Watch, 288 F.R.D. at 232 ("[T]his case is governed by Rule 4(h)(2) . . . ."), and subsection (2) provides that foreign unincorporated associations may be served in a foreign country in the same way in which foreign individuals in a foreign country may be served under Rule 4(f), with the exception of personal delivery under Rule 4(f)(2)(C)(i).  See Fed. R. Civ. P. 4(h); see also Freedom Watch, 288 F.R.D. at 232.  Moreover a foreign unincorporated association "must be served . . . at a place not within any judicial district of the United States, . . . by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(h)(2), 4(f)(3).  When devising an alternative means of service, a Court must make "an earnest effort . . . to devise a method of communication that is consistent with due process and minimizes offense to foreign law."  Fed. R. Civ. P. 4 advisory committee's note, (1993 amendments to subdivision (f)); see also Freedom Watch, 766 F.3d at 84 (same).  Freedom Watch "is responsible for having the summons and complaint served" in a method that comports with Rules 4(f) and 4(h).  Fed. R. Civ. P. 4(c).  Unless and until the procedural requirements for effective service of process are satisfied, the Court lacks authority to exercise personal jurisdiction over OPEC.  See Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 514 (D.C. Cir. 2002).  As it is Freedom Watch's burden to appropriately serve OPEC, Freedom Watch bears the burden of demonstrating the validity of its proposed method of service.  Freedom Watch, 288 F.R.D. at 232.

Freedom Watch's current motion and reply fail to support its requested relief.  Neither contain the factual showing nor the legal support necessary to warrant the relief sought—service of OPEC through a method that does not comport with Austrian law.  In Freedom Watch's effort

to sustain its burden, Freedom Watch relies on several out-of-Circuit and distinguishable cases,[3] see Mot. at 2, and the unsupported conclusion that its proposed method of service "will prejudice no party," id. at 3.  And while Freedom Watch belatedly argues in its reply brief that this Court "could still authorize [the requested method of service] if it would 'minimize' offense to Austrian law,"[4] Reply at 2 (citing Freedom Watch, 766 F.3d at 84 (citing Fed. R. Civ. P. 4 advisory committee's note)), it fails to provide any support for how its proposed method of service "minimizes offense to Austrian law," having provided no discussion of Austrian law and why viewed from that perspective its proposed method of service should be approved, see generally Mot.; Reply.

OPEC, on the other hand, opposes Freedom Watch's request to serve its United States counsel, arguing that service pursuant to Rule 4(f)(3) is inappropriate because, among other reasons:  (1) "the OPEC Headquarters Agreement constitutes an international agreement as contemplated by Rule 4(f)(3), and specifically prohibits service on OPEC without its consent . . . through U.S. counsel or otherwise under Rule 4(f)(3)," Opp'n at 10; and (2) "service through U.S. counsel would result in the same substantial affront to Austrian law" because the service would necessarily have to occur in Austria instead of the United States, Opp'n at 11; see also id. 11–25.  Notably, Freedom Watch's reply brief does not address or contest any of OPEC's

---

[3] The Court distinguishes the cases cited by Freedom Watch in Part C of this opinion, infra.

[4] Freedom Watch uses its reply brief to once again inappropriately request that this Court devise some method of service that would enable it to serve OPEC.  See Reply at 1 n.1 ("Although [Freedom Watch] seeks to serve service of process on . . . [OPEC's] U.S. counsel . . . [it] can also serve [OPEC] with service of process under Rule 4(f)(3) in any manner which the Court deems proper under the circumstances.").  The Court will not fall into this trap again and consider a request that should have been proposed by Freedom Watch itself through its motion.  See Freedom Watch, 766 F.3d at 81 (noting that "a party seeking a district court order would file a formal motion and include a proposed order").  Moreover, should Freedom Watch be inclined to file a motion requesting that this Court create some manner of service that would be "proper under the circumstances," Reply at 1 n.1, the Court will not consider such a motion, see id. at 86 (Wilkins, J., dissenting) ("Freedom Watch must identify for itself the appropriate course of action, file a motion seeking its favored relief, and allow the other side to respond." (emphasis added)).

arguments. See Reply 1–4. Thus, in the absence of any argument or authority offered to the contrary, the Court deems OPEC's positions as conceded, and further, accepts OPEC's unchallenged evidence and expert opinions as to the state of Austrian law, as well as the terms of the applicable international agreement. See Lewis v. District of Columbia, No. 10–5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (per curiam) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (internal quotation marks omitted)).

However, because it is remotely conceivable that Freedom Watch's legally unsupported argument that "at this stage of litigation this Court must simply consider the issue of service of process through Rule 4(f)(3) and reasonably exercise its discretion . . . to grant [it] leave to serve the attorneys for OPEC in the United States, outside of Austria's jurisdiction," Reply at 4, is ambiguously challenging OPEC's argument that service must occur in Austria, the Court will consider Freedom Watch's questionably advanced argument that service need not occur in Austria.[5]

**A.  Service Must Occur in Austria Pursuant to Rule 4(f)(3)**

Despite Freedom Watch's efforts to have the Court focus on Rule 4's Advisory Committee Notes as authority for its request, see Reply at 2, in this Circuit, when considering the application of Rule 4(f)(3), "the place to start . . . is the text of [the] Rule . . . ," In re Sealed Case, 141 F.3d 337, 341 (D.C. Cir. 1998) (applying this approach to Federal Rule of Civil

---

[5] It is generally the practice of this Court to deem an argument conceded where a party is represented by counsel yet it alludes to an argument without providing any legal or other support for it, because "the Court cannot infer the presence of an argument that has not been specifically raised." Ronkin v. Vihn, __ F. Supp. 3d __, ___, 2014 WL 5280682, *7 (D.D.C. 2014) (Walton, J.).

Procedure Rule 45).  Thus, based on a textual reading of both subsections (h) and (f)(3) of Rule 4, OPEC's position is correct—service <u>cannot</u> occur in the United States because, "[u]nless federal law provides otherwise or [OPEC's] waiver has been filed, . . . [service on an] unincorporated association . . . <u>must</u> be served . . . at a place <u>not within any judicial district of the United States</u>."  Fed. R. Civ. P. 4(h)(2), 4(f)(3) (emphasis added).  The rule provides no authorization for service occurring within the United States and seems to explicitly forbid such service absent federal law to the contrary or waiver.  And importantly, the Advisory Committee Note upon which Freedom Watch places so much importance does not contemplate service <u>within</u> the United States; rather, it only gives the Court guidance for fashioning service <u>outside</u> of the United States.  <u>See</u> Fed. R. Civ. P. 4, advisory committee's note (1993 amendments to subdivision (f)).  And Freedom Watch has failed to provide the Court with any "federal law provid[ing]" authority to permit serving process on of a foreign unincorporated association here in the United States.[6]  Fed. R. Civ. P. 4(f), 4(h).  Additionally, given the posture of this case, OPEC has not waived service.

Judges in this Circuit who have authorized service pursuant to Rule 4(f)(3) have done so only where some part of the service occurred <u>outside</u> of the United States.  <u>See, e.g.</u>, <u>Mwani v. bin Laden</u>, 417 F.3d 1, 5, 8 (D.C. Cir. 2005) (upholding district court's authorization of service on al Qaeda by publication, in Arabic, in, among other publications, <u>Al-Quds Al-Arabi</u>); <u>Kaplan v. Hezbollah</u>, 715 F. Supp. 2d 165, 167 (D.D.C. 2010) (permitting service by publication in three Lebanese newspapers in combination with service by a courier-service company in Lebanon to

---

[6] Although Freedom Watch cites several out-of-Circuit cases in which other district courts have authorized service on an international defendant's local counsel, Mot. at 2; <u>see</u> <u>Freedom Watch</u>, 766 F.3d at 83 (citing the exact same cases with identical parentheticals), these cases do not constitute "federal law [<u>i.e.</u> a federal statute, rule, regulations, etcetera] provid[ing] otherwise" as required by Rule 4, Fed. R. Civ. P. 4(f), 4(h) (banning service of process on foreign unincorporated associations in the United States "<u>unless federal law provides otherwise</u>" (emphasis added)).  Moreover, these cases are not binding on this Court and are also distinguished.  <u>See</u> <u>infra</u> Part C.

the alleged leader of Hezbollah); Juniper Networks, Inc. v. Bahattab, 07–CV–1771(PLF), 2008 WL 250584, at *2 (D.D.C. Jan. 30, 2008) (authorizing service through a Saudi Arabian email address and a Saudi Arabian fax machine); Haider Aziz Al-Sayed Hassim Ali Rasheed v. Saddam Hussein, 04–cv–1822 (EGS), Order, ECF No. 5 (D.D.C. 2006) (authorizing service on Saddam Hussein's London-based attorney in conjunction with publication in Iraqi newspapers for twelve consecutive weeks (citing ECF No. 3, Exhibit ("Ex.") 1, Declaration of Carl F. Lettow II ¶ 12). But see Lincoln Hockey Lim. Liab. Co. v. Semin, 05–cv–2094(HHK), 2005 WL 3294008 at *2 (D.D.C. Dec. 5, 2005) (authorizing service on foreign defendant's agents in the United States where an uncontested agency relationship existed).

Thus, the Court finds that pursuant to the text of Rules 4(h) and 4(f), service must occur outside "any judicial district of the United States," and absent any contrary argument or legal authority offered by Freedom Watch, the Court accepts OPEC's position that service in this case must occur in Austria.

### B.  Service Pursuant to Rule 4(f)(3) is Prohibited by International Agreement

Even if the proposed method of service were to occur in the United States, Freedom Watch's motions must still fail because OPEC's unchallenged evidence demonstrates that the Court cannot consider the proposed method of service by the very terms of Rule 4(f)(3). This conclusion stems from Rule 4(f)(3)'s explicit prohibition of service "by [any] means prohibited by international agreement." Fed. R. Civ. P. 4(f)(3).

The Court accepts OPEC's unchallenged representations that the OPEC Headquarters Agreement is an international agreement. See Opp'n at 6–10; Opp'n, 2nd Supplemental Declaration of Wolfgang Hahnkamper ¶¶ 17–20 (validating the OPEC Headquarters

Agreement's status as an international agreement).[7]  And it is uncontested that the only way Freedom Watch can effect service on OPEC in a manner not prohibited by the agreement is through diplomatic channels.  See El-Badri Decl. Ex. 1, Note Verbale at 2 ("[U]nder both Austrian law and international agreements concluded between Austria and international organi[z]ations based in Vienna, service of legal process on . . . OPEC . . . may only be effectuated through diplomatic channels.") (emphasis added); see also Freedom Watch 766 F.3d at 80 (finding that "Austrian law considers service of process to be a sovereign act," which "may be exerted only be [an Austrian] court").  Based on the Court's reading of the Note Verbale explaining the relevant provisions of the "international agreements concluded between Austria and international organi[z]ations based in Vienna," El-Badri  Decl., Ex. 1, Note Verbale, any form of service that does not occur through diplomatic channels and engage the Austrian Federal Ministry are implicitly forbidden by the governing international agreement, see id.  Thus the Court is foreclosed from considering any proposed methods that do not engage appropriate Austrian diplomatic channels.  See Fed. R. Civ. P. 4 advisory committee's note (1993 amendment, subdivision (f)) (permitting courts to consider a parties proposed method of service that is "not explicitly authorized by international agreement").  And while it is possible that the Court may have rejected OPEC's position that the agreement between Austria and OPEC constitutes an international agreement had Freedom Watch provided convincing conflicting authority, it did not.  Thus, Rule 4(f)(3) explicitly precludes the Court from considering Freedom Watch's request to serve OPEC's Counsel here in the United States because such service violates

---

[7] The Court notes that the exhibits supporting Mr. Hahnkamper's declaration are all written in what the Court assumes is German.  As this Court is devoid of any knowledge of the German language, and since Freedom Watch does not contest these supporting exhibits, it accepts the uncontradicted representations of OPEC's attorneys as accurate, as they are officers of the Court and thus have an obligation of candor to the Court.

a controlling international agreement.  See Fed. R. Civ. P. 4(f)(3) (authorizing Court ordered service "by other means not prohibited by international agreement") (emphasis added).

Consequently, based on the text of Rule 4(f)(3) coupled with in the absence of any contradicting authority or opposition presented by Freedom Watch as to the legitimacy of the status of this agreement as an international agreement, the Court is precluded from considering Freedom Watch's proposed method of service.

### C.  Freedom Watch's Cited Authority

Freedom Watch has failed to present any legal authority which supports its position that service on OPEC's United States counsel is permissible.  While Freedom Watch cites several out-of-Circuit cases where other jurisdictions have authorized service on an international defendant's legal counsel, the facts here distinguish this case from the cases cited by Freedom Watch.

In U.S. Commodity Futures Trading Comm'n v. Aliaga, the defendants originally resided in the United States and fled the country to evade service, 272 F.R.D. 617, 621 (S.D. Fla. 2011). Additionally, unlike the situation in Aliaga, "no international law prohibit[ed] the [plaintiff] from serving [the defendant] via e-mail [received abroad] or through service on local counsel in the United States."  Id. at 620.  Moreover, similar to the case here, the Aliaga Court denied the plaintiff's request to serve a second international defendant's husband's attorney where the plaintiff "provide[d] no citation to support" its request.  Id. at 621.  Here, Freedom Watch has presented no facts or even alleged that OPEC is evading service, that OPEC ever resided in the United States, or that its requested method of service does not violate international law.  Thus, the facts presented to the Court in Aliaga do not support Freedom Watch's request.

In <u>LG Electronics, Inc. v. ASKO Appliances, Inc.</u>, the Court found that the plaintiff's "service was sufficiently effected under the Hague Convention," 08-cv-828(JAP), 2009 WL 1811098, at *4 (D. Del. 2009), and based on that finding the Court allowed additional service of the defendant's attorney, <u>id.</u>  This Court has already determined, and the Circuit affirmed, that Freedom Watch's initial method of service failed to "establish[] that it validly served process on OPEC." <u>See</u> <u>Freedom Watch</u>¸ 288 F.R.D. at 233; <u>Freedom Watch</u>, 766 F.3d at 77 (affirming this Court ruling that "Freedom Watch had failed to effectuate valid service on OPEC"). Accordingly, the facts in <u>LG Electronics</u> are distinguishable from those at issue here.

Similarly,  <u>In re Potash Antitrust Litigation</u>, a multi-district-litigation case (which this case is not), the plaintiffs appropriately effected service on the Russian defendant pursuant to the Hague Convention, 667 F. Supp. 2d 907, 929 (N.D. Ill. 2009).  However, because "Russia ha[d] unilaterally suspended all judicial cooperation with the United Stated in civil proceedings," <u>id.</u>, the Court authorized four additional methods of service, two of which complied with Russian law, <u>id.</u> at 931 (finding that "service via email and fax [complied] with Russian law and [was thus] appropriate").  Again, here Freedom Watch's original efforts to effect service have been deemed contrary to Austrian law and it proposes no alternative method of service that complies with Austrian law.

In <u>Brookshire Bros. v. Chiquita Brands Int'l</u>, 05-CIV-21962, 2007 WL 1577771, at *1 (S.D. Fla. May 31, 2007), the defendant's original unsuccessful attempts at service complied with methods prescribed by the Inter-American Convention, <u>id.</u>  Therefore, because the defendant's counsel "had been representing the . . . [d]efendants in a different antitrust litigation pending . . . [in the same] District," service of the defendant's attorney was deemed appropriate. Freedom Watch has not yet attempted to serve OPEC in an appropriate manner, nor has it

represented that the law firm it desires to serve is representing OPEC in any other cases in this district.  Consequently, Brookshire is not on point.

Finally, in RSM Prod Corp. v. Friedman, 06-CIV-11512(DLC), 2007 WL 2295907, at *2 (S.D.N.Y. Aug. 10, 2007), the Court determined that there was no law that "prohibits service on a defendant residing in the Russian Federation through service on his counsel in the United States," id.  Here, however, the Court has already concluded, based on Freedom Watch's failure to oppose OPEC's representations concerning Austrian law and the propriety of serving OPEC's United States counsel, regardless of whether that service occurs in the United States or in Austria, that such service violates an international agreement.

### III.    CONCLUSION

For the foregoing reasons, the Court concludes that Freedom Watch has failed to demonstrate that service of OPEC's United States counsel is a permissible method of service pursuant to Rule 4(f)(3).  Accordingly, Freedom Watch's motion to serve OPEC through its legal counsel in the United States is denied.

**SO ORDERED** this 4th day of June, 2015.[8]

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.